We're happy to hear argument in our last case. Trustees of the Plumbers and Pipefitters National Pension Fund v. Plumbing Services, Inc., December 13, 2403. May it please the court, my name is Greg Yagmai and I represent the Plumbers, also known as PSI, and PSI Mechanical, who are the appellants in this case. Before I talk about our arguments, I want to bring up three undisputed facts in this particular case. The only signed document by the defendants is an April 8, 1998, letter of assent. The second point is, it's undisputed, there has been no bargaining agent that has authority to represent the defendants to enter into any kind of agreement, much less the CBA. And the third point is that the fund, or the plaintiffs in this case, have solely filed their claim for withdrawal liability. And the issue we've raised in our briefs, several issues regarding how the district court erred, but the one I want to focus on is summary judgment. The district court erred in granting summary judgment because it didn't apply the Supreme Court has held when the movement has the burden of persuasion at trial, they have to submit evidence pursuant to Rule 56, that if uncontroverted, would enable them to have a directed verdict at the trial. So the issue is, what did they submit in response or in support of their summary judgment? The only thing that they submitted was an affidavit by a gentleman named William Sweeney. And we say that that was not even sufficient enough to carry the burden, and this is the reason why. They didn't submit the letter of assent, there was no collective bargaining agreement submitted, there was no trust agreement, which refers to the withdrawal liability submitted. The only thing that they submitted was that Mr. Sweeney's affidavit said, unequivocally, without the ability to offer this, that the defendants were signatory to a collective bargaining agreement. So your client never initiated arbitration, right? That's correct, Your Honor. Well, doesn't federal law then say, if no arbitration has been initiated, the amounts demanded by the plan sponsor shall be due and owing on the schedule set forth by the plan sponsor? That is true, Your Honor, but that does not apply in this case, because that presumes, like the district court presumed in their summary judgment, that the defendants were employers under the statute. If you're not an employer under the statute But, but, but, then you're going back to that argument. You're not going back to the it was insignificant, what you were talking about was there was insufficient proof of the damages. But what your real argument is, that they were not, they had no duty to contribute to the fund, right? Well your argument is They weren't, they weren't, they weren't employers. They were not employers per the statute. Why did they contribute for 13 years? Why did they contribute for 13 years is because what they submitted, and that's why it's a key point that this claim is about withdrawal liability and not promised contributions. They entered into a letter of assent and they did what they were supposed to. They got the union workers, they paid the union, there's no dispute whatsoever. But to suggest that that makes them subject to withdrawal liability from CBAs that are four successive CBAs after this letter of assent, to bind them is basically trying to create a contract by conduct. Which in the case law even cited by the Apo Lee in this particular case, with regards to CBAs, you can, and they did it in the proffer of an estoppel argument, but to suggest that they paid for 13 years somehow makes them bound to withdrawal liability is trying to create a contract by conduct. So your, please, go ahead. Your argument is that they could pay as long as they wished and then just walk away? No, your honor, that was not, that's not the argument. Okay. The argument is that What's between, what's between the existence of withdrawal liability in light of the letter of assent and no letter of assent at all? Well, the difference is the letter of assent, that's what I'm saying, the district court erred because they didn't take the analysis of what was the letter of assent? The letter of assent, was that actually a contract? And we briefed in there about going through links of whether Alabama state law applies and the argument that we have made is that's not even a contract. There's not specific enough when a 1998 letter of assent refers to the ineffect collective bargaining agreement, which expired in 1999. And that's why the key point that there's no bargaining agent in all the cases cited by the APALEE and all the relevant cases regarding the CBA, they all had an authorized agent that could bind them to future CBAs. I thought the letter of assent indicated that your client was bound not only as to the present CBA, but as to all future CBAs. It used the word hereafter, it did not use successive CBAs, which is a key point because it couldn't bind them to something he didn't know what they were going to be. And in those cases, the one case that they cited, the industrial turnaround case that they cited is clearly distinguishable because when it had that language in there, successive CBAs, it also explicitly designated a bargaining agent to negotiate the future CBAs. So what you've got in this particular case is one defendant, or I guess defendants at that time, one defendant who signed a letter of assent that had no representation that would bind him to future successive CBAs. The defendants couldn't know what the terms were. They couldn't know what the rate was going to be. They couldn't know what the jurisdiction of the area covered by the union. I mean, to suggest- Well, I mean, they could have, I suppose, if they had inquired. Well, Judge, it's not our particular duty to inquire about whether they're the ones trying to hold us bound to successive CBAs. And that's the only way their claim succeeds is if that letter of assent, the first thing, is it a contract under Alabama law, period. And we argue that under Alabama law, that applies because that's where the contract was signed, but it was indefinite and not specific enough to make that even a contract. So if that's not a contract, if that letter of assent under Alabama law- Well, you never had any legal obligation to do anything. That's why I asked you why you did it, Roy. Well, no, that's not true, Your Honor. If we got, I mean, I guess on the estoppel argument, back to the estoppel argument, if we got the union workers like we did and we didn't pay them, that would be, and that's the case side of the Alaska Troll case that actually the Appalachians signed, where in that particular case, it was undisputed there was a collective bargaining agreement. Then the employer, who acknowledged that he was an employer, notified the union that he was repudiating an agreement, but didn't notify the actual trust fund. And so they continued to send workers, and he continued to contribute to it, but the issue in that particular case, and he tried to file a suit to get the contributions back, saying, well, I wasn't an employer, therefore I get my money back, and that's when the analysis of promise contributions as opposed to withdrawal liability comes into play. So what the district court did, what it held was, they had an affidavit from someone who had no personal knowledge who said that they were signatories to collective bargaining agreements, which was impossible because they didn't sign collective bargaining agreements. They didn't allege, other than if you hold the original letter of assent, but all the successive ones for 13 years is what they suggested there. They probably should have used the word obligors rather than signatories. Well, they used that because they didn't have the document. They didn't even put the trust agreement that deals with it. If you read the actual CBAs, which the district court asked before, after it had granted summary judgment, it had granted summary judgment and then it directed the fund to give them the CBAs, and it's a huge point because the affidavit by Mr. Sweeney, who unequivocally says they were signatories, after summary judgment is granted, he files an affidavit and uses the phrase, upon information and belief, they were bound by these collective bargaining agreements. After the evidence had been presented that there was only a letter of assent and that there was no bargaining agent, it goes, the exact same person, his affidavit goes from they are signatories to it, to upon information and belief, they were obligated under these CBAs. So let me see if I'm following. Your client had a choice. Your client could either go to arbitration and raise any and all of these issues regarding withdrawal liability, and maybe won, maybe lost, maybe won a little bit, lose a little bit, but your client decided not to go that route. Your client decided, as it was entitled to decide, to go the Article III route. And roll the dice, as it were, with a federal district judge who would conduct, absent summary judgment, a bench trial, right, because you're not entitled to a jury trial here. And your client didn't prevail. And so now you're here arguing that the district judge erred in granting summary judgment because, why? Because they didn't meet the burden, Your Honor. They used the wrong standard of summary judgment, because they would have the burden of proof at trial, because they were the plaintiffs, just like if we were the defendant making a verdict. Well, what was the burden, according to you? What was their burden? The burden on summary judgment, according to... I don't need you to recite the Rule 56 to us. What was their burden? What did they have to show to the district court? They had to support credible evidence that if it was offered at an actual trial and it was uncontroverted, that they would be entitled to a judgment as a matter of law, is what they would have to submit under the summary judgment standard when they have the burden of proof at trial. So what did they have to show to establish your client's liability? They had to establish he was an employer, which they didn't do. The arbitration, all of those other dominoes fall down only after they establish as a matter of law that they're an employer. That's why the defendants did not have to go to arbitration. They did not have to waive a right of jury trial. I mean, their Seventh Amendment right to a jury trial is presupposed that they have to go to arbitration because they were an employer. What is your understanding of what is an employer under federal law? You agree this is an issue of federal law. No, not the letter of assent. No, sir. I'm not. I'm asking you about the status of an employer under the act. I mean, the statute is a question of federal law. Yes, sir. A federal and the interpretation of the actual statute is an interpretation of federal law. Yes, sir. But the point is before you can. So why? Why did the district court fail error in concluding as a matter of federal law under the act that your client, your clients were not employer or joint employer? Well, they the reason that they erred at district court was the only evidence they had. Maybe they could have proved it at some. In other words, it's an insufficiency of evidence. Your argument is there was insufficient evidence in order to prove. Yes. One of the one of the things, Your Honor, that we're saying is that what they submitted to the court was one affidavit unequivocally saying he was a signatory to a collective bargaining agreement when that's not what the facts are. He's never been. It said if it had used my term obligor pursuant to the act, would your argument be the same? My argument would be the same because the letter of assent has to be interpreted under Alabama law to determine whether that's even a contract. Because it's the only signed document, which I will mention, they didn't even submit where the defendants. So is your argument that you can only be an employer under the federal statute through a written agreement that complies with state law? No, Your Honor. I'm not. Okay, then I'm not following. I'm not following. The reason why is the only document that they have is a letter of assent that refers to one collect. I'll give you an example. There's a case that they actually cited in sort of a head note called L'Engle and L'Engle involved. I understand your point about the collective bargaining agreement ran its course. And you're not making that argument very explicitly, I think. Your argument seems to be once that collective bargaining agreement expired, your client was off the hook. They needed another assent letter. Is that essentially your argument? That is one of the arguments that they, or either they had to have an appointed agent to negotiate because that's what these cases hold. They routinely have an agent to negotiate them that controls those gaps. If there's a gap to the next contract to the next contract, they have a retroactive provision that prevents those gaps. So what you've got here from the evidence submitted is you've got one letter of assent that expired in 1999 at best, if you find that as a contract. And you say it expired because the CBA expired. Yes, sir. And what's your support for that? The support for that is after the summary judgment was entered. They actually submitted the CBAs. No, no. My question is, what is your support for the contention that once the extant CBA expires, the letter of assent is no longer legally effective? Because there either has to be... What case do you have that holds that? Well, Judge, the case that I have that talks about the letter of... The industrial turnaround case talks about if the only reason a letter of assent can bind you to successive collective bargaining agreements is if you have an appointed negotiating agent who's actually negotiating for you. And we don't have that. So essentially, what we have is they are trying to hold that a letter of assent that referred to one... Hereafter. But hereafter can't refer, Your Honor. That's what we're saying. It's not specific enough. What does it refer to? Judge, that's a good point. No, no. That's a good question. No, it is a good point. Put to you. Judge, that's what I'm saying. What does hereafter refer to? No, it doesn't refer to CBAs that are not negotiated. No, you can't say, I don't know. Well, Judge, I don't... You have to come up with an answer. Well, I don't in the respect of does it bind them to successive collective bargaining agreements. What is your alternative interpretation of hereafter? I don't have an alternative because we don't need to have... Don't you lose the case if you don't have an alternative? No, Your Honor. We do not lose the case. To suggest that this one letter of assent binds us to collective bargaining agreements that nobody even knows what the terms are. How can we have a meeting of the minds? If you apply federal common law, how can you have a meeting of a mind to say that I'm going to sign a letter of assent that uses some generic term like here and after, not successive collective bargaining agreements, not specifics like that, and uses the word here and after. So according to that logic, they could put any term they wanted to in a collective bargaining agreement, the second one, the third one, the fourth one, and we'd be bound by that. If there had been no successive collective bargaining agreement and you were still dealing with the original agreement, would your clients have been employers for purposes of that agreement? No, Your Honor. They would not be employers for the subject of withdrawal liability because, again, they're trying to create, maybe, I'm sorry, I didn't understand the question. Well, your argument seems to be that because we had, the record shows that there were successive collective bargaining agreements, that the letter of assent was insufficient to bind your clients to those future CBAs. That's correct. But if we had only had the one CBA and the letter of assent, and then this issue of withdrawal liability came up in that context, would your clients be employers for purposes of that CBA? No, that's our original. We would not be because it would have to be interpreted under Alabama law and it was not, it refers to, as we had in the evidence in the record, and of course, you know, they took great umbrage with whether he read the document or didn't read the document, but the fact that it refers to a CBA that was in effect, whether the contract was specific enough, and my time is up, and the last thing I'll say about that, if you actually read the CBA that they finally submitted after summary judgment was granted, which by the way, the court granted it on an original complaint, when actually that wasn't even the governing document. There was an amended complaint actually filed, but in the finding of facts, the court referred to an original complaint. Under Alabama law, we say that it was not specific enough to make it with, particular to that original collective bargaining agreement, is what our position is. Good morning, and please the court. My name is Dinah Leventhal, and I apologize for my voice. I represent the Appalachians in this case, the Plumbers and Pipefitters National Pension Fund, and obviously the fund, the trustees of the fund were the plaintiffs below, and to ask that this court affirm the district court decision to grant summary judgment for the fund. This is a pretty straightforward collection case. Under ERISA, as amended by MEPA, as you know, Congress set up a streamlined process for the resolution of disputes requiring the employer to pursue arbitration of its disputes with the fund's determinations. What are letters of intent, like this letter of intent, intended to accomplish? Okay, that's a great question. Typically in the construction industry, this fund is a fund that primarily covers employees in the construction industry. So the fund is, you know, a third party beneficiary. It doesn't negotiate the agreements, obviously, that's between the union and an employer association. Typically in a particular metropolitan area, let's say there's a union that covers that metropolitan area, and there's also a contractor's association, and the two entities negotiate a standard collective bargaining agreement that applies to all of the employers who work in a jurisdiction. So individual employers are not negotiating separate agreements with the union. There's one standard collective bargaining agreement. So if you're a small contractor in Birmingham, Alabama, you don't get to negotiate your own separate agreement typically. Now, there may be some exceptions, but the kind of general practice is that there's going to be one collective bargaining agreement that has standard terms, that applies to all employers in the jurisdiction. What individual employers do, either they participate as part of the employer association in negotiating that agreement, or they sign a sort of Me Too letter, which is a letter of assent that says, we agree to be bound by the agreement that was negotiated by the employer association with the union. And that's what happened here. It's not unusual. It's not a very unusual circumstance. And the language... Okay. And I sort of intuited maybe that was the answer. Why is there no explicit delegation of bargaining authority to the association by the employer then? Well, I think that more typically you would see that. You would see that kind of explicit language. But it's not essential. Basically, they're saying, we agree to the agreement that's already been negotiated. So they're not... I mean, typically, if you're giving somebody authority to negotiate an agreement in the future, you would say, I give you authority to negotiate. But this purports to, as we've discussed with your colleague, purports to govern the future as well. Right. Right. And that's why I was asking why there wasn't any delegation of authority. Right. And I think it could have been better worded to grant that authority explicitly. But I think that it's clear enough, certainly from the pension fund's point of view, based on the fact that the employer, as you noted, did continue to contribute. And in fact, there is such a thing as contract by conduct, which my colleague suggested was sort of a bizarre notion. But in the labor context, that's quite common, that the employer continues to contribute to the pension fund after the agreement has expired. And these agreements, these collective bargaining agreements, very often have what are called evergreen clauses, which says that the terms of the contract roll over unless somebody affirmatively terminates. And in this case, the letter of assent itself gave the parties the ability to affirmatively terminate, which this employer did after 13 years of contributing. And so there's no dispute that the employer, through his own admission, there's a very, very nice explicit admission in the record. I'll just give you the page in the joint appendix. It's document 36-1, page 27 of 77. The company acknowledges that page 27 of 77. You don't have the J.A.? Oh, I'm sorry. I never got a corrected copy of the joint appendix. So if you look under tab 36. I don't think we have that. Yeah. Okay. Now, just a minute. Do you have an index of the appendix in the very beginning? Yes. Okay. So what document would it be? We can maybe find it that way. It's the memorandum in support. It's my client's memorandum of law in support of plaintiff's motion for summary judgment. What's it say? Okay. What it says is, now, this was something that the employer's attorney, I guess, put together and the employer's principal verified. The Plumbing Services, Inc. signed a letter of assent to the working agreement with Local 91 on April 8th, 1998. The letter of assent had a 60-day termination provision. By letter dated March 10th, 2011, Plumbing Services, Inc. terminated its relationship with Local 91, effective May 10th, 2011. A copy is attached as Exhibit A. That's the letter by which they terminate the obligation to contribute. To our knowledge, all dues, contributions, and benefits were paid to Local 91 and to the Plumbers and Pipefooters National Pension Fund for work performed through May 10th, 2011. So they're saying that they signed the letter of assent, April 98, that bound them to the collective bargaining agreement, that they made all contributions required under the collective bargaining agreement until they exercised their right to terminate. What, the third or fourth CBA after the original letter of assent? Yes, sir. Yes. So I think that, you know, the fundamentally our position is that the fund made a determination that the employer had an obligation to contribute and that that obligation terminated, which are those determinations are within the range of sections for which arbitration is required. The employer did not initiate arbitration. Has there ever been an arbitration of this issue, to your knowledge? I'm not aware of one, but it's difficult to get copies of arbitration decisions. You only get them if they end up going to federal court. So it's hard to generalize about that, but you know, there are cases where employers have come to federal court first and have said, we're not an employer, so we don't have an obligation to go the arbitration route. But this case is not of that type because this employer did sign a letter of assent and because it did contribute for 13 years. So you know, there are, I think maybe it was the Sentra case where the court, this court said, no, I'm sorry, it wasn't the Sentra case. It was a second circuit case called Levy Brothers FROX, excuse me, Levy Brothers FROX, which I believe we cited in our brief, but that case, the court said, you know, this is not a circumstance where this employer, you know, the pension fund shows up out of the blue. The employer has never heard of the pension fund, and the pension fund says you owe this withdrawal liability, as in this case, the employer had been sending contributions to the pension fund over the course of 13 years, and you know, statutory withdrawal liability was the result that flowed from the employer's decision to terminate its obligation to contribute to the pension fund. Can I just go back a minute? You know that language that you read to us? Was this from the affidavit of William T. Sweeney? It was an, I believe it was an attachment to Mr. Sweeney's affidavit. Is that what it is, the affidavit of William T. Sweeney? Yes. And he's an officer of the union, right? He's, he is the administrator of the pension fund. He's the custodian of records of the pension fund, so that is the basis for his personal knowledge. He works for the trustee. Yes. Yes. But that was an attachment to his affidavit, and the document itself was a document that the employer. By the employer? Yes. So in other words, okay, so there's this process that occurs after the pension fund sends an assessment letter. So Mr. Sweeney's affidavit sets out sort of all the documents that occurred. The fund sends an assessment letter saying you owe this withdrawal liability. The employer then has the right under the statute to request review of any issues that it has with the assessment, which this employer did, and that letter was attached to Mr. Sweeney's affidavit. And the focus there is on the calculation of the withdrawal. They can raise any dispute they have with regard to the calculation, but also any issue with regard to whether they're liable. But I mean, in this case, was it about liability at all, or was it about the calculation? They basically said the company's out of business, we don't have any money. I mean, that was the upshot of it. In other words, go away. Right. Yeah. Okay. Well, what I was trying to get at is what you were relying on. I have the letter, is it 115, the letter from Douglas J. Centro. But that is who is representing the plumbing services, right? Correct. Is that the letter? I thought that you were suggesting to us that the other side had executed a damaging account of what happened. Yes. And where is that? Okay. So there's a letter. Is it that letter? Is it the letter from? I apologize for the confusion. Douglas J. Centro? Yes, but it's dated January 9th, 2013. Do you see that letter from the same attorney that you just referenced? No, I have a September 10th, 2012. Which appendix was it? Do you know that? It's in, it's around 115. Judge Motz, if you could keep flipping forward from the one you were looking at, you'll get to another letter from the same law firm. Forward or backward? I think it's chronological, so keep going forward because it's January 9th, 2013. I have Robert H. Cook's letter. Okay, keep going forward. Okay. So it's not attached to your memorandum. See, I thought it was in support of your motion for summary judgment. No. So there's a January 9th, 2013 letter at 131 of the appendix enclosing the answers of Plumbing Services, Inc. to the questionnaire. Is that what you were talking about? Precisely. Thank you, Judge. Okay, that went fast. The next page after that is answers of Plumbing Services, Inc. Yes, that's at 132. Okay, now what are we going to read? The very first response. Uh-huh. Do you agree with your colleague's assertion that we should apply Alabama law to this issue of the formation of the agreement? No. No, I don't. You know, labor law is treated as a federal area of special concern, and the cases say that federal law applies to the interpretation of collective bargaining agreements. Now, my colleague would say this wasn't a collective bargaining agreement. It was a letter of assent. But this Court's decision in industrial turnaround makes pretty clear that a letter of assent is, you know, acceptable under Section 8F of the National Labor Relations Act. Well, I think his distinction is not. We're not talking about the interpretation of the agreement, but more specifically about its formation and whether or not there was a valid agreement to begin with. Okay. I mean, I'm not sure on the specific issue of formation of the contract which law would  Well, I can't imagine that the federal common law would be much different than the common law in general, but you obviously believe that there was an agreement here, regardless of what law you apply. I think that's correct. And, you know, I think the language of the letter of assent is very clear. I mean, he, you know, may deny later once it's convenient that he ever read the thing, but it specifically states that he read it and that he agrees to be bound by it as if it was fully referenced and incorporated. He refers in his letter of termination, he says he's going to, quote, abolish its working relationship, which I presume was not drafted by a lawyer, but one never knows. But is that substantial evidence of subsisting agreement up until the abolishment of the working relationship? I think that it certainly implies that there is an obligation that is being terminated. And, in fact, there's another, I hesitate to give you another reference because we're not provided the correct record extract, but there's another affidavit that he, that the employer's principal submitted, which was part of their motion to dismiss for lack of personal jurisdiction, which was document 30 in the district court, and I'm not sure how it's paginated. It's in the first volume of the record extract. It's an exhibit to the defendant's motion to dismiss the amended complaint for lack of personal jurisdiction. I don't know if that makes it possible for you to find it. I'm sorry, what is it? Is it an affidavit? Yes, affidavit of Kenneth E. Julian. Dated April 15, 2013? Yes. Yes, that's it. J61. So, if you look at the third paragraph on the first page of that, just consistent with Judge Davis's comment, he says, prior to its July 27, 2012 dissolution, Plumbing Services Inc. was a commercial plumbing contractor operating under a union contract, which is a reference to the collective bargaining agreement that the employer apparently believed that it was obligated to continue contributing to until such time as it terminated that obligation. So, you're making a distinction here between Plumbing Services Inc. and PSI Mechanical Inc.? Well, he is, because he's saying PSI Mechanical never had an obligation to contribute, but that goes to the issue of trades or businesses under common control, which are treated as the same employer for purposes of withdrawal liability. And it's clear from this affidavit that he was, as he says in the second paragraph, he was the sole stockholder of both companies, which means both companies were under common control and are both liable for the withdrawal liability. Just, you know, very briefly, my colleague didn't mention the personal jurisdiction issue, but I think that the district court was entirely correct in its decision on the personal jurisdiction issue. You know, it's a federal statute with nationwide service and process provision. This court dealt with that issue in the RICO context, in the ESAB group case, very clearly analogous, as I believe Judge Motz yourself said, in the Denny's case, where the, you know, the Fifth Amendment due process principles apply. Here there was no, there was no evidence provided of substantial inconvenience that would rise to a constitutional level. Thank you. There's no personal liability here, is there? No. There's no personal. So we're all here enjoying ourselves. We're arguing about a judgment that is against a small company that likely does not have asset. PSI Mechanical still exists. Oh, PSI still. And, you know, it's not in the record of this case, but we have recovered some money on the judgment, which was not stayed pending appeal. So it's not totally, it's not totally academic. You're getting $85 every two weeks from some bank account somewhere. We actually, we got a garnishment in Alabama that was a chunk of money. So it's not entirely academic. Chunks of money matter. They matter to a pension fund. Yes. Thank you very much. Thank you. Justice Davis, just to follow up on that. I'm a judge. I don't. Yes, Judge Davis. I appreciate the promotion, but. To follow up on that. I would not serve if appointed. To follow up on that, they've actually, you know, registered this judgment in Alabama and collected $110,000. 110? 110. That was owed. It was garnished. They had done a commercial job that we're obligated to pay subcontractors and vendors, which they haven't been able to do because this money was garnished. So it's something more than largely academic because it's, I'm sure. But you didn't bring a counterclaim here, did you? We did not bring a counterclaim. So when are you going to get that money back if you win? That's the issue. We'll have to file a motion with the Northern District of Alabama. There's a couple things I want to respond to my colleague. She started her argument saying this is straightforward collection case and typically this is what happened and typically, you know, they're involved in a bargaining agent agreement. But that's not what happened in this case. That's the point that we're trying to say that there was not enough evidence in summary judgment. That's the way they approached the summary judgment. They had an affidavit of somebody who was not competent to testify and, in fact, testified about something that was not true. That they had signed collective bargaining agreements. And that's the point I'm trying to make in this case with regards to the summary judgment issue, especially with the burden that they have to carry. And my colleague has also conceded that we don't have to arbitrate in order to litigate the issue of whether they're an employer or not. We don't have to arbitrate to see whether we're subject to arbitration. No, I don't think they suggested that. No, they suggested the opposite. They agreed that the opposite applies, that we can go through federal court saying that we are not an employer. Yeah, my point was simply you could have arbitrated that. Well, Judge, here's the point. They could have arbitrated also, too. Right. That seems to be how it happens is they tell somebody, you're an employer. You're subject to withdrawal liability. We can arbitrate, but if we don't do it, then you waive all the defenses. We can sue you 765 miles from home where you've never been before. We can collect on successive collective bargaining agreements that you've never signed. You've never hired a bargaining agent before and that it's only moderately inconvenient because it would be expensive to the fund, but yet we can come to Alabama and charge a rate that's about 40 percent cheaper than the rate submitted to the court in the district court in order to collect this money. And that's not what the law is. If you break it down in the analysis, what was the letter of assent under Alabama law? And to address Judge Diaz, the legal case is exactly on point about that. They actually cited in their brief about whether out whether state law can apply. And here's the quote. In other words, even if dispute resolution to a collective bargaining agreement on one hand and state law, on the other hand, would require addressing precisely the same set of facts as long as the state law claim can be resolved without interpreting the agreement itself. The claim is independent of the agreement for preemption purposes. What special part of Alabama law do you think helps you? I think the two cases we have cited in Alabama law that says that letter of assent is not specific enough and not definitive enough. We cited two cases, the White Sands case that dealt with a real estate transaction that had a letter that identified specific parcels for specific prices, but yet had some future unknown with regards to who was going to do what with getting sort of the subdivisions. But even more appropriate was called the Prince case. It was a bunch of lawyers fighting over attorney's fees. And it was some huge litigation and gasoline explosion in Alabama. And it was the similar thing to the letter of assent. There was a letter written about what attorneys are going to get what fees. And the court held that a letter that's a partial integration of some other document that doesn't have the specific or the definitive terms, which we couldn't have had here in this case, is not a contract under Alabama law. And I don't think – they only dispute Alabama law doesn't apply. In the briefs, they didn't say that if it did apply that we were wrong about that assertion. So if you have Alabama law applies with the letter of assent and it's not a contract, they can't create – they say, well, you can create conduct or create a contract, but not what they're seeking in this particular case is a withdrawal liability some decades down the road. Now, if the court found that – Well, isn't withdrawal liability simply of a piece with the ongoing obligation? Your Honor, it's a – the promise contributions are one aspect that all the cases that they have cited – But it's of a piece. The point is to make funding these pensions a viable option, correct? It is part of the piece, except part of the withdrawal liability is also contractual based on a trust agreement. So what they submitted for summary judgment was they said we have collective bargaining – I'm talking about the statute. No, I understand the statute. I'm talking about the purpose of the statute. I understand the purposes of the statute, but they cannot – they can't create – Alaska Troll case says they can't create a conduct – contract for some future unknown benefit. They can only argue a stopple, and you can't have a stopple if the person that they are trying to say made some sort of representations or actions doesn't objectively have the intent to do so. I mean, my client could not have objectively, based on his conduct, say I'm going to be subject to some withdrawal liability from four successive collective bargaining agreements. But there's actually evidence in the record that that's exactly what your client acknowledged, an obligation. He did not acknowledge an obligation that he was bound by some collective bargaining agreements that would make him subject to withdrawal liability. No, not withdrawal liability, but pension liability. Withdrawal liability is simply another piece of the pension liability. But it's an important differentiation in the case law, and I'm almost out of time. It's an important differentiation. Oh, I'm sorry. Is there anything else I could address or complete? Thank you very much. Thank you. We'll ask our clerk to return to court, and then we'll come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Andre M. Davis